IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WALTER HUGH HITT, #315-191,        *
      Plaintiff,

                               *

    v.                            CIVIL ACTION NO.  AW-04-1814
                               *

MICHAEL STOUFFER, et al.,
      Defendants.            *

                         *******

## MEMORANDUM

On June 17, 2004, Walter Hught Hitt, then incarcerated at the Metropolitan Correctional Training Center ("MCTC"), filed a pro se action pursuant to 42 U.S.C. § 1983, alleging that Defendants assaulted him and failed to protect him from other prisoners Plaintiff also alleged that he was denied medical care, harassed by correctional officers, and had his property improperly confiscated.  Paper No. 1.  As directed by this Court, Plaintiff filed a Supplemental Complaint, narrowing his claims to those surrounding excessive force and failure to protect.  Paper No. 4.   The case now is before the Court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Supplement thereto filed on behalf of Defendants.[1] Paper Nos. 14 and 20.  These Motions, which will be treated as Motions for Summary Judgment, have not been opposed by Plaintiff.[2]   No hearing is needed to resolve the facts and issues presented in this case. *See* Local Rule 105.6 (D. Md. 2004).

---

[1]On September 10, 2004, this Court ordered Plaintiff to complete a United States Marshal (USM) Form 285 for Dr. Robinson  in order to assist the Court in obtaining service of process. Paper No. 9.  Plaintiff was cautioned that his failure to timely return the completed USM Form 285 might result in dismissal of his claims against Dr. Robinson.  Plaintiff has failed to submit to the Clerk the completed form for processing. Consequently, the undersigned concludes that the instant action shall be dismissed without prejudice as to Dr. Robinson for Plaintiff's failure to comply with the Order of the Court.

[2]Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on November 30, 2004 and March 22, 2005,  Plaintiff was notified that Defendants had filed dispositive motions, the granting of which could result in dismissal of his action.  Paper Nos. 15 and 21. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. *Id*.

## I. STATEMENT OF FACTS

According to Plaintiff, on March 15, 2004, Defendants Gamble and Cutter handcuffed Plaintiff and took him to a secluded room where he was kept for one hour. Plaintiff states that the handcuffs were placed around his wrists so tightly that they caused "bone bruising." Plaintiff states that both officers pushed Plaintiff around and slung Plaintiff around by his arms causing him severe pain and cuts on his wrists. He also states he was thrown into a wall. He then states he was ordered to give a urine sample. Paper No. 4.

Plaintiff states that on April 5, 2004, another inmate was placed in Plaintiff's cell who wanted to fight. Plaintiff alerted Officer Hickey, who allegedly told Plaintiff "to fight and that he was not moving [Plaintiff]." Plaintiff states that he and the other inmate fought, resulting in Plaintiff receiving a gash on his hand a bloody mouth. He states that "later [he] had three teeth pulled because of this incident." *Id.*

Lastly, Plaintiff claims that his case manager, Mr. Bennett, has refused to see him. Plaintiff states that due to concerns for his safety he can not be transferred to RCI, WCI or ECI. *Id*.

According to the unrefuted records before the Court, on March 15, 2004, Plaintiff was charged with an inmate rule infraction. Plaintiff was ordered to submit to urinalysis. He failed to comply with the collecting officer's directions and was issued a ticket. Paper No. 20, Ex. 1, Records of March 15, 2004. At no time during the inmate hearing or otherwise did Plaintiff complain that he was subjected to excessive force. *Id.* Officer Cutter, by declaration, states that he does not recall Plaintiff being handcuffed on March 15, 2004, and specifically denies that Plaintiff was taken to a secluded room and assaulted by Defendant Cutter or Defendant Gamble. *Id*., Ex. 2. Likewise, Defendant Gamble by declaration states that he does not recall that Plaintiff was handcuffed in order to report for urinalysis. He states that the normal procedure

is for the inmate to be provided a pass to report for the urinalysis.  Gamble specifically denies that he or

Cutter assaulted Plaintiff.  *Id*., Ex. 3.  A review of Plaintiff's medical records demonstrate that Plaintiff

submitted no sick call slips or other complaints regarding an assault or injuries allegedly received on March

15, 2004. Paper No. 14, Attachments.

On April 6, 2004, Plaintiff's status was reviewed by case management.  Plaintiff stated that a "hit"

had been placed on him by a prison gang due to an outstanding drug debt.  He requested and was given

protective custody status.  At no time did Plaintiff state that he was in fact assaulted by another inmate, or

that he sought the assistance of any officer in fending off an attack and that such request was denied.  *Id.*,

Ex. 1, Records of April 6, 2004 classification review.  Defendant Hickey states in his declaration that

Plaintiff's allegations  regarding his failure to render aid are completely untrue.  He states that there was no

fight on April 5, 2004 during the 8-4 shift when he was working.  He states that if there had been a fight

he would have responded and if medical care had been requested he would have signed off on it.  Hickey

further states that Plaintiff never advised him that his life was in danger.  He states that log entries indicate

that the following day, April 6, 2004,  Plaintiff claimed that he was in fear for his safety and was moved to

a single cell. *Id*., Ex. 4.        The medical records show that on April 11, 2004 and May 13, 2004,

Plaintiff submitted sick call slips regarding loose teeth.  Neither on the sick call slips nor during examination

did Plaintiff  allege that his teeth had been knocked loose in a fight.  Rather, the dentist found that Plaintiff

suffers from severe bone loss and generalized gingival recession with mobility in all of his remaining teeth.

The dentist noted "hopeless perio involvement" and extracted three teeth on April 20, 2004.  Plaintiff

returned to the dentist on May 20, 2004, for the extraction of another tooth. He again failed to allege that

the tooth was loosened due to an altercation with another inmate.   Paper No. 14, Attachments.

Plaintiff was transferred from MCTC to the Maryland House of Corrections on December 2, 2004. Paper No. 20, Ex. 1.

## II. STANDARD OF REVIEW

In order to survive a defendant's properly supported motion for summary judgment, a plaintiff is required to produce some evidence to support each of his constitutional claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where all of the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 322. While the facts and all reasonable inferences drawn therefrom must be viewed in a light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only disputed issues of material fact will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.      Failure to Protect

Plaintiff complains that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from assault by another prisoner. The Eighth Amendment does recognize this right. *See  Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). As noted by the Supreme Court  in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . .  to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for antisocial

criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.  Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference.  *Id*. at 834.  Deliberate indifference in the context of a failure to protect claim means that a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.").

The undisputed records before the Court contain no evidence Plaintiff was attacked on April 5 or 6, 2004.   Even assuming Plaintiff was attacked in his cell on April 5, 2004, there is no evidence that Defendants were deliberately indifferent to a known risk of harm.   Prior to the alleged April 5, 2004 assault, Plaintiff had been offered and declined protective custody on at least three occasions.  Paper No. 14, Ex. 1.  When Plaintiff requested protective custody on April 6, 2004, it was immediately granted.  At no time during Plaintiff's classification review or treatment by medical staff did Plaintiff claim that he had

been assaulted by another inmate or that correctional officers failed to protect him from an assault by another inmate.

To the extent that Plaintiff's complaint can be construed as alleging a failure to protect in that he feared being transferred to a prison where he could not safely be housed, his claim also fails, as Plaintiff was ultimately transferred to MHC, a prison Plaintiff specifically states he can safely be housed in and one in which none of his known enemies are housed. Paper No. 20, Ex. 1. As noted, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer*, 511 U.S. at 837-39. There is simply no evidence before the Court that Defendants were deliberately indifferent to Plaintiff's safety.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Plaintiff's complaint is not verified. Accordingly, Defendants' unopposed Motion for Summary Judgment shall be granted.

**B.     Excessive Force**

Analysis of cruel and unusual punishment claims "necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). In order to meet the subjective component of this test in

an excessive force case, a prisoner must show that the force was applied "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U S. 1, 6-7 (1992)  In making this determination, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U. S. 312, 321 (1986).

Insofar as the objective element of an excessive force case is concerned, the prisoner "need not show that [the] force caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action.  All that is necessary is proof of more than de minimis pain or injury." *Williams*, 77 F.3d at 761(citation omitted); *see also Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994).  Medical records reflect that Plaintiff never complained of any injury arising out of the incident allegedly occurring on March 15, 2004.

More importantly, Plaintiff  has failed to bring forth any evidence to satisfy the subjective component.  There are no medical records, administrative remedy requests, or even testimony brought forth at Plaintiff's rule infraction hearing, which allege that Plaintiff was assaulted by Defendants.  The uncontroverted declarations of Defendants, coupled with the documentary evidence,  reveal that the alleged assault did not occur.  Plaintiff has brought forth no evidence to demonstrate otherwise.  Accordingly, there is no showing that Defendants acted maliciously and sadistically to cause Plaintiff harm.

## C.      Conspiracy

To the extent Plaintiff's Complaint can be construed as alleging a conspiracy among Defendants, his claim fails.  A conclusory allegation of a conspiracy, such as is made in this case, is insufficient to state

a claim. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2nd Cir. 1997) (unsupported claim of conspiracy to issue false disciplinary reports fails to state claim); *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) ("Allegations of conspiracy . . . must be pled with sufficient specificity and factual support to suggest a meeting of the minds.") (quotation omitted). *Langworthy v. Dean*, 37 F. Supp.2d 417, 424-25 (D. Md. 1999).   There is no evidence, other than Plaintiff's bald allegations, concerning the matters alleged.  Again, Plaintiff has failed to submit evidence to support his claim.

### III.  CONCLUSION

In light of the foregoing, a separate Order shall be entered dismissing Plaintiff's Complaint without prejudice as to Dr. Robinson, granting Defendants Stouffer, Bennet, Hickey, Cutter and Gamble's Motion for Summary Judgment, and entering judgment in their favor and against Plaintiff.

 August 24, 2005                                    /s/
   Date                                      Alexander Williams, Jr.
                                            United States District Judge

8